UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**CHANTAL RUFF,**

    **Plaintiff,**

    **v.**

**ASCENSION HEALTH SERVICES,**

    **Defendant.**

Civil Action No. 24-2562 (JDB)

## MEMORANDUM OPINION

Chantal Ruff was employed by Ascension Health Services and Providence Health Systems for several years. Her Ascension superiors informed her in April 2023 that she would be terminated effective July 31, and her employment so ended. In May 2024, Ruff filed a charge with the Equal Employment Opportunity Commission ("EEOC") arguing that Ascension had wrongfully terminated her in retaliation for reporting her supervisors to Human Resources ("HR"). After the EEOC dismissed her charge as untimely, Ruff sued Ascension in court. Ascension now moves to dismiss Ruff's complaint for failure to state a claim and to dismiss itself as a defendant. The Court will grant the motion to dismiss the complaint.

## BACKGROUND[1]

From November 2021 to July 2023, Ruff was employed by Ascension as an office assistant at Providence Hospital in Washington, D.C. See Pl.'s Consolidated Opp'n [ECF No. 13] ("Consolidated Opp'n") at 2. Ruff told Ascension that "she suffered from anxiety and panic attacks specifically triggered by working in the Primary Care department," which Ascension

---

[1] The Court takes the following factual allegations from Ruff's complaint and subsequent filings, and on review under Federal Rule of Civil Procedure 12(b)(6), it accepts them as true and "liberally construe[s] [them] in . . . her favor." See, e.g., Johnson v. District of Columbia, 572 F. Supp. 2d 94, 102 (D.D.C. 2008).

1

initially accommodated by employing Ruff in the urgent-care department. See Compl. [ECF No. 1-1] at 18. There, Ruff worked under Kimberly Saint Bernard and Thelesa Bryant. Id. at 17. Ruff contends Saint Bernard was "regularly verbally abusive," and Ruff made repeated—but always unanswered—requests to meet with Bryant to address Saint Bernard's behavior. See id. In October 2022, approximately two weeks after Ruff had filed an HR complaint against Saint Bernard, Ascension transferred Ruff to the primary-care department. See id. at 17–18.

The transfer was difficult for Ruff. She claims it "was presented . . . as a permanent, mandatory requirement of her continued employment," and although she "continuously sought an explanation for the change and an opportunity to have it reversed due to her disability," Ascension denied her requests. See id. at 18. In March 2023, Ruff suffered from low blood pressure and had a fainting episode at work. Id. at 13, 18. She sought medical care at Ascension's urgent-care center and informed Bryant that her physician had referred her to the emergency room. Id. ¶ 1. Ruff later learned that Bryant had discussed her "treatment and diagnosis" with other employees, including Saint Bernard. See id. at 5, 13, 18. Ruff then filed an HR complaint alleging that Bryant had shared her medical information in violation of the Health Insurance Portability and Accountability Act ("HIPAA"). Id. at 18. Following her HR report, Ruff contends Saint Bernard retaliated by "denying treatment requests for patients entered by" Ruff—so Ruff reported Saint Bernard to HR, too. Id. HR concluded both investigations without findings of wrongdoing. Id.

On April 28, 2023, Ascension informed Ruff that due to the closing of its urgent-care, radiology, and pharmacy centers, she—along with all employees in those divisions—would be terminated effective July 31. See id. at 5, 13–14, 19. Ruff argued that she was a permanent employee of primary care, within the internal medicine department, as of her October 2022

transfer, but Ascension stated that the transfer had been temporary and Ruff remained an employee of urgent care. See id. at 5, 13, 19. As scheduled, Ruff's last day was July 31.

In mid-August, Ruff, through counsel, sent a demand letter to Ascension seeking $150,000 in damages for alleged retaliation and wrongful termination. See id. at 17–23. The demand letter noted Ruff may have claims against Ascension under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213, for Ascension's failure to accommodate Ruff's disability by transferring her to primary care, as well as under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17, for terminating Ruff in retaliation for her reporting of Bryant and Saint Bernard to HR. See Compl. at 20–21.[2]

After failing to secure a settlement, Ruff filed a discrimination charge with the EEOC in mid-May 2024. See Mot. to Oppose Dismissal of Case [ECF No. 10] ("Opp'n 2) at 1. On May 20, the EEOC issued a dismissal letter concluding Ruff's "charge was not filed within the time limits under the law; in other words, [she] waited too long after the date of the alleged discrimination to file [her] charge." See Compl. at 24. The letter served as an "official notice . . . of the dismissal of [Ruff's] charge and of [her] right to sue." See id.

Armed with her right-to-sue letter, Ruff, proceeding pro se, sued Ascension in D.C. Superior Court, and Ascension removed the case to this Court. Id. at 2–4; Notice of Removal [ECF No. 1] ¶¶ 1, 4. The Court construes Ruff's complaint as bringing a claim for retaliation under the ADA. See Compl. ¶¶ 1–3; 17–20; Consolidated Opp'n at 1.[3] Ruff seeks $150,000 in

---

[2] The Court understands that Ruff now pursues an ADA claim that is different from, and may be inconsistent with, the potential claims contemplated in the demand letter.

[3] This conclusion is based on Ruff's original complaint and her responses to Ascension's motion to dismiss. See Richardson v. United States, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (explaining when a court should consider a pro se plaintiff's "complaint in light of [her]" subsequent filings, including responses to a defendant's motion to dismiss). Ascension objects to this approach, but neither of the cases it cites involved a pro se plaintiff. See Def.'s Reply Supp. Mot. Dismiss [ECF No. 11] at 2–3; Def.'s Reply to Consolidated Opp'n [ECF No. 14] at 3 (both citing

damages, including severance pay and compensatory damages, a neutral employment reference, the removal of a June 2023 negative performance review from her employee file, and costs and attorney's fees. See Compl. ¶ 2.

Ascension moved to dismiss both the complaint for failure to state a claim and Ascension as an improper defendant. Mot. Dismiss [ECF No. 5] ("Mot."). Ruff opposed, see Mot. Opp'n Replacement of Def. [ECF No. 9] ("Opp'n 1"); Opp'n 2, and Ascension filed a reply, see Def.'s Reply Supp. Mot. Dismiss [ECF No. 11] ("Reply"). After Ruff filed another opposition, see Pl.'s Opp'n to Def.'s Mot. [ECF No. 12] ("Opp'n 3"), the Court ordered Ruff to file a consolidated opposition, see Minute Order (Nov. 21, 2024); Consolidated Opp'n. The Court then permitted Ascension to file another reply, see Def.'s Reply to Consolidated Opp'n [ECF No. 14] ("Second Reply"), and Ruff filed a surreply, see Pl.'s Reply Supp. Consolidated Opp'n [ECF No. 15] ("Surreply"). The motion is now very fully briefed.

## ANALYSIS

Ascension seeks dismissal of Ruff's complaint under Federal Rule of Civil Procedure 12(b)(6) because Ruff failed to exhaust administrative remedies—a foundational requirement of an ADA claim. See Mot. at 1. Ascension also moves to dismiss itself as a defendant and substitute Providence Hospital d/b/a/ Providence Health System, who it contends employed Ruff. See id. at 1 n.1.

On Rule 12(b)(6) review, the Court must determine whether, accepting the complaint's well-pleaded allegations as true, the complaint states each claim plausibly on its face. See Ashcroft

---

BEG Invs., LLC v. Alberti, 85 F. Supp. 3d 13 (D.D.C. 2015); and Jones v. Ass'n of Am. Med. Colls., Civ. A. No. 22-1680 (EGS), 2023 WL 2327901 (D.D.C. Mar. 2, 2023)).

Ascension also construes Ruff's complaint as raising a claim under HIPAA and moves to dismiss that claim on the grounds that HIPAA does not provide a private right of action. See Mot. Dismiss [ECF No. 5] at 1, 5. Because Ruff admittedly does not bring a HIPAA claim, see Consolidated Opp'n at 3, the Court will deny as moot that portion of Ascension's motion.

v. Iqbal, 556 U.S. 662, 678–79 (2009). The Court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir. 2012). Because Ruff is proceeding pro se, the Court holds her pleadings to even "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972) (per curiam). In addition to the complaint's allegations, the Court may consider "any documents either attached to or incorporated in the complaint." EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## I.   ADA Claim

"Under the ADA, employers are required to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability,' 42 U.S.C. § 12112(b)(5)(A), and are prohibited from retaliating against any individual for opposing 'any act or practice made unlawful' by the ADA, 42 U.S.C. § 12203(a)." Murphy v. District of Columbia, 390 F. Supp. 3d 59, 64 (D.D.C. 2019). "To establish a prima facie case of retaliation, an employee must establish that: (1) she made a charge or opposed a practice made unlawful by the ADA, (2) the employer took a materially adverse action against her, and (3) there existed a causal link between the adverse action and the protected activity." Walker v. Child.'s Nat'l Med. Ctr., 236 F. Supp. 3d 136, 143–44 (D.D.C. 2017) (internal quotation marks omitted).

The Court need not assess whether Ruff's complaint plausibly alleges these elements, however, because her claim fails at a critical antecedent step: the timely exhaustion of administrative remedies.[4] Before an ADA plaintiff sues in federal court, she "must exhaust [her] administrative remedies by filing an EEOC charge and giving that agency a chance to act on it."

---

[4] The ADA's exhaustion requirement is not jurisdictional, but a court may consider it when a party properly raises it. See Baker-Notter v. Freedom F., Inc., Civ. A. No. 18-2499 (RC), 2019 WL 4601726, at *4 (D.D.C. Sept. 23, 2019) (citing Fort Bend Cnty. v. Davis, 587 U.S. 541, 550–51 (2019); Doak v. Johnson, 798 F.3d 1096, 1104 (D.C. Cir. 2015)).

Marshall v. Fed. Express Corp., 130 F.3d 1095, 1098 (D.C. Cir. 1997). Exhaustion requires that an aggrieved party both timely file her EEOC charge—in D.C., within 300 days "of the occurrence of the alleged unlawful employment practice," Akonji v. Unity Healthcare, Inc., 517 F. Supp. 2d 83, 90–91 (D.D.C. 2007) (citing Carter v. George Wash. Univ., 387 F.3d 872, 879 (D.C. Cir. 2004); and 29 C.F.R. § 1601.13(a)(4)(ii)(A))—and ensure that "the substance of [her subsequent] ADA claim . . . fall[s] within the scope of the administrative investigation that can reasonably be expected" to have followed her EEOC charge, Marshall, 130 F.3d at 1098 (internal quotation marks omitted).

Ascension focuses on the timeliness requirement, arguing that Ruff filed her EEOC complaint more than 300 days after the alleged unlawful employment practice. See Mot. at 4–5. Hence, the Court must determine when the allegedly unlawful employment practice occurred, when Ruff filed her EEOC charge, and how much time elapsed in between. Ascension contends that the date of the alleged violation is the date it provided Ruff notice of her termination—April 28, 2023—such that Ruff had until February 22, 2024, to file her EEOC charge. See id.; Second Reply at 6–7. Because Ruff filed her charge in May 2024, Ascension argues it was untimely.

Ruff agrees that the relevant violation was her termination. See, e.g., Compl. at 20; Opp'n 1 ¶ 2 ("My claims arise from my termination on July 31, 2023, after I filed multiple reports with [HR] regarding bullying, retaliation, and workplace violations."); Opp'n 3 at 1–2; Consolidated Opp'n at 2–3; Surreply at 2. But she disagrees that April 28 is the correct date to start the 300-day clock. In Ruff's view, the clock started on the date of her actual termination—July 31, 2023. See Opp'n 1 ¶ 2. And on that timeline, she filed her EEOC charge within the 300-day window that expired on May 26, 2024.

Ascension is correct. When an employee believes she has been wrongfully terminated, the date of the alleged violation is the date on which she received notification of her termination, "rather than on the date [her] employment terminated." Chardon v. Fernandez, 454 U.S. 6, 6–8 (1981) (per curiam) (citing Del. State Coll. v. Ricks, 449 U.S. 250, 258 (1980)); see, e.g., Willis v. District of Columbia, Civ. A. No. 13-2061 (RBW), 2016 WL 8943306, at *6 (D.D.C. Oct. 26, 2016) (noting the clock begins when the plaintiff "receives final, unequivocal, and definite notice of [her] [termination or] suspension, even if the effective date occurs later," and collecting cases (internal quotation marks omitted)). Ruff concedes that she received notice of her termination on April 28, and she makes no argument that the notice was tentative. See Compl. at 5. So the date of the alleged violation is April 28, 2023.

As Ascension calculated, 300 days after April 28 means Ruff had until February 22, 2024, to file her EEOC charge. In her various submissions to this Court, Ruff claims that she filed on either May 13, May 14, or May 17, 2024. Compare Opp'n 2 ¶ 2, with Consolidated Opp'n at 1, with Surreply at 1. The specific date does not matter, because under any date in May 2024, Ruff's EEOC charge was filed long after the clock had run.[5]

In a final attempt to save her claim, Ruff argues that even if the Court pegs the violation to April 28, her August 2023 and April 2024 settlement attempts tolled the 300-day clock such that her EEOC charge was still timely in May 2024. See Opp'n 3 at 1–3; Surreply at 1–2. Specifically,

---

[5] Ruff at times references potential claims for the failure to accommodate her disability in violation of the ADA, discrimination or retaliation under Title VII, and retaliation under the D.C. Human Rights Act. See, e.g., Compl. at 20; Opp'n 3 at 2, 4; Surreply at 1. Even if the Court construed her complaint to adequately raise these claims, they too would fail the exhaustion requirement. To start, any ADA claims based on alleged adverse employment actions prior to April 28 are necessarily time-barred. And Title VII uses the same 300-day clock, so any Title VII claims stemming from her termination are also time-barred. See 42 U.S.C. § 2000e–5(e)(1). Finally, the D.C. Code has a slightly different exhaustion timeline: a plaintiff must file her civil suit within one year of the alleged violation, and the clock may be tolled while the aggrieved party's complaint is pending with the EEOC. See D.C. Code § 2–1403.16. But even accounting for tolling, Ruff filed her suit in D.C. Superior Court long after the one-year deadline. See Murphy v. PricewaterhouseCoopers, LLP, 580 F. Supp. 2d 16, 25 (D.D.C. 2008).

Ruff contends the ADA's statute of limitations is tolled "when parties engage in good faith settlement discussions." Surreply at 2. Ruff is correct that timely filing of an EEOC charge "is not a jurisdictional prerequisite" and is thus "subject to . . . estoppel[] and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). But neither equitable tolling nor equitable estoppel toll time spent on settlement discussions.

Equitable tolling is "exercised only in extraordinary and carefully circumscribed instances," Smith-Haynie v. District of Columbia, 155 F.3d 575, 579–80 (D.C. Cir. 1998), and it requires that a plaintiff demonstrate "(1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way and prevented timely filing," Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks omitted). Examples of extraordinary circumstances include where "the court had led the plaintiff to believe that she had done everything required" to timely file, Weaver v. Bratt, 421 F. Supp. 2d 25, 38 (D.D.C. 2006), or where the claimant has either "actively pursued [her] judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by [her] adversary's misconduct into allowing the filing deadline to pass," Norman v. United States, 467 F.3d 773, 776 (D.C. Cir. 2006) (quoting Irwin v. Dep't of Veterans Affs., 498 U.S. 89, 96 (1990) (footnotes omitted)). Settlement discussions, by contrast, are not an extraordinary circumstance—especially because Ruff does not allege that the discussions prevented her from timely filing an EEOC charge.[6] See, e.g., Williams v. Amalgamated Transit Union Local 689, 245 F. Supp. 3d 129, 140–41 (D.D.C. 2017) (denying equitable tolling based on similar arguments).

---

[6] Ruff's then-counsel's apparent confusion with the 300-day timeline is not an extraordinary circumstance, either. See Letters from Christopher Haake to Jay Heitman [ECF No. 12-3] at 1; Lawrence v. Florida, 549 U.S. 327, 336–37 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling . . . .").

"[M]ere participation in settlement negotiations" is equally not a basis for equitable estoppel. See Cristwell v. Veneman, 224 F. Supp. 2d 54, 61 (D.D.C. 2002); e.g., Johnson v. District of Columbia, 572 F. Supp. 2d 94, 103 (D.D.C. 2008) ("[A]n employer's attempt to resolve a dispute raised by an employee does not rise to the level of affirmative misconduct" as required for equitable estoppel. (internal quotation marks omitted)).

For these reasons, Ruff did not timely file her EEOC charge, and the Court will dismiss the complaint for failure to state a claim.

## II.     Propriety of Named Defendant

Finally, Ascension also seeks to be dismissed as a defendant in this action. Ascension makes this argument only in a conclusory footnote, stating that Ruff's "employer is Providence Hospital." See Mot. at 1 & n.1; Reply at 1 & n.1. But Ruff's complaint alleges that she was employed by Ascension Health. Compl. ¶¶ 1, 3. And, in her subsequent filings, see supra note 2, she submits numerous documents showing she was employed by both Ascension and Providence. For example, one letter welcomes Ruff to her "career with us at Ascension/Providence Health System," stating "[w]e are very excited to have you join us." See Letter from Ascension/Providence Health System to Chantal Ruff [ECF No. 9-1] at 1. The letter provides the name and contact information for Ruff's hiring manager, who has an "@ascension.org" email address. Id. Similarly, after Ruff's termination, her then-attorney sent a demand letter to Ascension, and an Ascension attorney responded that he was the "contact going forward for this matter." See Email from Jay Heitman to Christopher Haake [ECF No. 12-2] at 1; see also Emails between Jay Heitman and Christopher Haake [ECF No. 12-3] at 1–2; Email from Jacob Burton to Christopher Haake [ECF No. 12-4] at 1 (email from an "@ascension.org" email address and stating "This is Jake from HR Central Ascension."); Email from Jacob Burton to Christopher Haake [ECF

9

No. 12-5] at 1. Ascension's threadbare statement that it did not employ Ruff at best raises a genuine dispute of material fact that is not suitable for resolution on a motion to dismiss. Hence, the Court will deny Ascension's motion to dismiss itself as a defendant.

## Conclusion

Ruff alleges a concerning history of mistreatment. But because her claim is time-barred, the Court will grant Ascension's motion to dismiss the complaint for failure to state a claim. See, e.g., Charles v. District of Columbia, 164 F. Supp. 3d 98, 100 (D.D.C. 2016).

**SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: July 16, 2025